## WARD PRODUCTS CORPORATION v. FINKEL et al.

### No. 640.

District Court, E. D. New York.

June 19, 1940.

Pennie, Davis, Marvin & Edmonds, of New York City, and Ely & Frye, of Akron, Ohio (Albert L. Ely, Jr., of Akron, Ohio, of counsel), for plaintiff.

Morris Kirschstein, of New York City, for defendant.

INCH, District Judge.

Plaintiff sues the defendant alleging that plaintiff is the sole and exclusive owner of U. S. Patent No. 2,152,316, applied for on July 22, 1938, by one Roman Kopanski, and on March 28, 1939, duly assigned by Kopanski to plaintiff to which the patent was thereafter directly issued. Plaintiff then alleges that defendant has infringed this patent and also has been guilty of unfair competition.

From the evidence it appears that both plaintiff and defendant had for some time been engaged in manufacturing and selling radio antennae which had an extensible metallic tube and could be mounted on an automobile, outside, and slightly to the left front, of the driver. There is nothing new in such an article for, since radios were installed in automobiles, some sort of antenna has been necessary and this general type of a telescopic rod has been familiar in the industry. However, one of the objections to it was, that it produced a rattle. This was due to the sections knocking against each other when the automobile was in motion. Kopanski decided to introduce into the sections some sort of lubricant, and after trying out several of these, he found that glycerine, castor oil, mineral oil or motor oil, were sufficient to cushion the sections and thereby prevent the rattle. Because of the close connection of the sections, one within the other, the oil or grease was forced in at one end.

In the Kopanski patent he states that his invention "relates to an improved radio antenna especially adapted for use on an automobile. As is well known, there is now in quite general use a telescopic form of radio antenna on automobiles; it is also quite well known that there is considerable rattle between the telescoping parts of this type of antenna * * * It is therefore the object of my invention to devise an antenna of the type mentioned with means for preventing such objectionable rattle".

(Lines 1-14, page 1, of patent, plaintiff's Exhibit 1).

Further, Kopanski states, after describing the construction of his antenna, "as indicated in the drawing, practically the entire internal space of the antenna is filled with a liquid of a certain character, as will be explained. This liquid is applied through the open lower end of the outer tube". (Lines 9–12, column 2, page 1, of said patent).

He then goes on to state: "The liquid may be glycerine, castor oil, mineral oil, motor oil or other liquids of similar character, it being essential that the liquid be capable of preventing clattering or rattling contact between the parts. * * * Water, for instance, does not possess this property and is therefore not suited for this purpose, and the same thing is true of other liquids of like character". (Lines 23–33 of said patent).

Finally, Kopanski states that, whether the telescopic tube is extended partially or completely, nevertheless, the liquid will still practically fill the spaces between the tubes and the rod and that, "As well as can be judged, this is due to capillary attraction or simply adhesion and cohesion". "Without excluding other theories in an attempt to explain how the liquid prevents rattle, this phenomenon is believed to be due to the pronounced surface or skin tension of the liquid. That is, the liquid possesses sufficient shock resistance or film strength not to break down" (Lines 47–55 of said patent).

Plaintiff relies on all five claims of the patent which are as follows:

"1. A radio antenna comprising a hollow metallic tubular member, a longitudinally extensible metallic member mounted within said tubular member, and a liquid of comparatively high surface tension within said tubular member and substantially and continuously filling the space between said members during all positions of the extensible member, whereby there will be prevented a rattling of the same in any adjusted position.

"2. A radio antenna comprising a hollow metallic tubular member, a longitudinally extensible hollow metallic tubular member mounted within said first tubular member, a longitudinally adjustable metallic member mounted within said second tubular member, said members having means of continuously free communication throughout the entire space therebetween, and a liquid of comparatively high surface tension within said first tubular member and substantially filling the space between said members, whereby there will be prevented a rattling of the same.

"3. A radio antenna comprising a hollow metallic tubular member, a longitudinally extensible hollow metallic tubular member mounted within said first tubular member, and having restricted contact with the inner surface thereof and being otherwise spaced therefrom, a longitudinally adjustable metallic member mounted within said second tubular member and having restricted contact with the inner surface thereof and being otherwise spaced therefrom, said members having means of continuously free communication throughout the entire space therebetween, and a liquid of comparatively high surface tension within said first tubular member and substantially filling the space between said members, whereby there will be prevented a rattling of the same.

"4. In a device of the class described, the combination of longitudinally telescopic metallic members, a liquid of comparatively high surface tension substantially and continuously filling the space therebetween during all positions of the members, and means for sealing the liquid there within, whereby there will be prevented a rattling of the same.

"5. A radio antenna comprising a hollow metallic tubular member, a second metallic member extensibly mounted within said tubular member, a body of liquid having a surface tension corresponding approximately to that of glycerine substantially and continuously filling the space therebetween during all positions of the extensible member, and means for sealing the liquid therewithin, whereby there will be prevented a rattling of the same".

There was no attempt to indicate that Kopanski claimed to have discovered any new and useful liquid. On the contrary he states the character of liquid which will do the work, each of which was, of course, well known. Nor does he show why these liquids work except by the theory of adhesion and cohesion which theory was also common knowledge to those using such liquids.

In substance Kopanski has taken the familiar telescopic antenna and removed the objectionable rattle by introducing between

the sections some well known oil or grease which likewise acts as a lubricant. Just how this passed the patent office, in view of the prior art, is not clear for everything about the Kopanski disclosure is comparatively old.

Counsel for plaintiff earnestly insists, however, that Kopanski's patent for the first time solved the problem of obtaining mechanically noiseless telescopic antenna by discovering that the telescopic tubular members would co-operate with a liquid of comparatively high surface tension to maintain a column of the liquid continuously filling the space between the concentric portions of the members in any position to which the antenna might be adjusted. As a matter of fact, however, in spite of the rather impressive manner of thus describing the discoverey of oil or grease to prevent rattle the patent itself indicates that all this is accomplished by the natural adhesion and cohesion of a liquid such as castor oil, motor oil, or those of similar character. In other words, once such liquid· is forced into the interior of the apparatus the rattle ceases.

Efforts to broaden the disclosure and claims find no foundation in the evidence. The most that can be said of Kopanski is that he tried the well known expedient of introducing the said grease or oil to overcome the objectionable rattle. His adaptation did not reach the dignity of invention with its necessary monopoly.

There are a number of patents cited by the defendant which indicate the·use of oil or grease to prevent rattling, for instance, the Hastings' patent, No. 1,465,667 dated August 21, 1923, applied for October 31, 1931, relating to steering gears of automobiles and the prevention of rattling and furnishing lubrication therein.

As the patent is invalid for lack of invention over the prior art there is no necessity for considering the· allegation of infringement. The success which is said to have followed the plaintiff's nonrattle telescopic antenna must be attributed to the quality of the articles manufactured by plaintiff and the ability to merchandise the same.

This brings us to the second cause of action, that of unfair competition.

There is nothing to prevent the defendant from using such grease or oil to stop the rattle in their telescopic antenna which they too have been selling to the trade and there is not the slightest proof that there was any actual confusion or that defendant attempted to pass off his goods for plaintiffs. The cartons in which both the plaintiff's and defendants' products are contained are different in appearance and color and colored cartons of various kind were familiar in the industry. An effort is made to show that the red-ball tip used by plaintiff and also used by defendant was a distinguishing feature of plaintiff's article, but such tips were in the market and have been used indiscriminately by both ·plaintiff and defendant. The claim therefore that defendant unfairly competed with plaintiff cannot be sustained by the evidence in this case.

Accordingly, the complaint must be dismissed, with costs.